1  MARSHALL R. COLE (*Pro Hac Vice*)
   mcole@nemecek-cole.com
2  VIKRAM SOHAL (*Pro Hac Vice*)
   vsohal@nemecek-cole.com
3  **NEMECEK & COLE**
   A Professional Corporation
4  16255 Ventura Boulevard, Suite 300
   Encino, California 91436-2300
5  (818) 788-9500
   Fax: (818) 501-0328
6
   DAVID J. MERRILL (Nevada Bar No. 6060)
7  david@djmerrillpc.com
   **DAVID J. MERRILL, P.C.**
8  10161 Park Run Drive, Suite 150
   Las Vegas, Nevada 89145
9  (702) 566-1935
   Fax: (702) 993-8841
10
   Attorneys for Plaintiff
11 ROBERT J. CIPRIANI

12                **UNITED STATES DISTRICT COURT**

13                     **DISTRICT OF NEVADA**

14

15

16 ROBERT J. CIPRIANI, an individual,        Case No. 2:23-cv-01626-JAD-VCF

17            Plaintiff,                      **PLAINTIFF'S OPPOSITION TO**
                                             **DEFENDANT SCOTT SIBELLA'S**
18       v.                                  **MOTION TO DISMISS COMPLAINT**
                                             **PURSUANT TO FEDERAL RULES OF**
19 RESORTS WORLD LAS VEGAS, LLC, a           **CIVIL PROCEDURE, RULE 12(b)(6)**
   Delaware limited liability company, RESORTS
20 WORLD LAS VEGAS HOTELS, LLC, a            **[ECF 19]**
   Delaware limited liability company, SCOTT
21 SIBELLA an individual, and DOES 1-10,     [Filed concurrently with Objection to Request
                                             for Judicial Notice]
22            Defendants.

23                                           **Oral Argument Requested**

24

25

26

27

28

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

3820801.1                          1

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

Plaintiff Robert J. Cipriani ("Plaintiff") respectfully submits this opposition to Defendant Scott Sibella's ("Sibella") motion to dismiss the Complaint pursuant to Rule 12(b)(6).[1]

## I.    **INTRODUCTION**

Sibella's motion to dismiss is based on his selective and self-serving reading of the Complaint. He focuses on allegations that he believes supports his arguments, while turning a blind eye to a plethora of allegations that form the actual basis of Plaintiff's claims. The motion should be denied for the following reasons:

*First*, contrary to Sibella's argument, the Complaint is not barred by NRS 463.3407, because the principal thrust or gravamen of each of the six causes of action is Defendants' actions that exposed Plaintiff to a prolonged and brazen campaign of harassment, assaults and threats by Robert Alexander, and ***not*** any communications between Defendants and the Nevada Gaming Control Board ("NGCB") and/or the Nevada Gaming Commission ("NGC").

*Second*, Plaintiff's negligence-based claims sufficiently plead duty on the part of Sibella because the Complaint alleges that Sibella individually took actions that were designed to expose Plaintiff to Alexander's harassment and he informed Alexander about Plaintiff's complaints, knowing full well how Alexander would react.

*Third*, the Complaint sufficiently pleads a claim for intentional infliction of emotional distress ("IIED") and Sibella's demand for additional details regarding the alleged distress, while proper for discovery, is not a ground for dismissal under Rule 12(b)(6).

*Finally*, the Complaint sufficiently alleges that Sibella exposed Plaintiff to Alexander which posed a risk of serious injury to Plaintiff, and Sibella's actions were motived by personal gain.

Plaintiff respectfully requests that the Court deny Sibella's motion.

## II.    **SUMMARY OF THE COMPLAINT**

Plaintiff is a professional gambler and a regular patron at Las Vegas's high-stakes casino tables. (Complaint ¶ 1.) While it may be difficult for Defendants to comprehend, Plaintiff really does care about the ethics of his profession and he expects other gamblers and casinos to abide by a

---

[1] Unless otherwise indicated, all references to "Rule" are to the Federal Rules of Civil Procedure.

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

set of rules. Specifically, Plaintiff believes that, "criminals should not be permitted to gamble stolen and ill-gotten monies in Las Vegas casinos, and further believes that casinos should comply with their Anti-Money Laundering and due diligence obligations." (Complaint ¶ 8.) Accordingly, when he "becomes aware that someone is betting misappropriated funds, he does what is right, and notifies the appropriate authorities and persons responsible for ensuring clean gambling, the preservation of stolen funds, and the safety of casino patrons." (*Id*.) The foregoing principles are what made Plaintiff a threat to Defendants, which they actively sought to silence and remove.

Defendants Resorts World Las Vegas LLC and Resorts World Las Vegas Hotels, LLC (collectively, "RWLV") operate a resort, mall and casino on the Las Vegas Strip. (Complaint ¶ 2.) Sibella is a "career executive for hotels, resorts and casinos in the Las Vegas area and beyond." (Complaint ¶ 3.) Prior to his termination in September of this year, Sibella was the President and Chief Operating Officer of RWLV. (Complaint ¶¶ 3, 72, 73.)

In the summer of 2021, Plaintiff witnessed Robert Alexander ("Alexander") gambling at RWLV's casino. (Complaint ¶¶ 9-12.) Alexander is a convicted felon and a habitual conman. Between 2013 and 2017, Alexander solicited and maintained investments in his online gaming venture, Kizzang. He ended up misappropriating over $1.3 million in investment funds to feed his lavish lifestyle and gambling habit. Alexander was arrested in February 2019, and he later pled guilty to wire fraud and securities fraud. (Complaint ¶¶ 12-15.)

Alexander was not the only criminal that Plaintiff witnessed openly gambling at RWLV's casino. Brandon Sattler ("Sattler"), another convicted felon, was being allowed to gamble freely at RWLV. (Complaint ¶ 22.) Plaintiff also witnessed Edwin Ting ("Ting"), another fraudster and convicted felon, allowed to gamble at RWLV's casino.

Sibella "personally" knew Alexander and other fraudsters with criminal histories (e.g., Sattler and Ting) who were permitted to gamble at RWLV's casino. (Complaint ¶¶ 11-24.) Based on his relationship with those individuals, Sibella overruled RWLV's compliance protocol to allow Ting and his friends to gamble at RWLV, even hosting Ting's birthday party." (Complaint ¶¶ 21-25.) "Sibella enabled [convicted felons to gamble] by overruling RWLV's Anti-Money Laundering and due diligence compliance protocols." (Complaint ¶ 32.)

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

"Sibella [was] personally familiar with [Plaintiff] . . . [who] ha[d] notified Sibella on multiple occasions of the continued presence of gamblers with criminal records, pending criminal charges, or who [were] otherwise the focus of law enforcement investigation at RWLV's tables." (Complaint ¶ 57.) However, when Plaintiff was making those complaints to Sibella, "he was unaware that it was Sibella himself who was directly involved. Once Sibella realized that [Plaintiff] posed a threat to Sibella, he not only refused to take action to protect [Plaintiff], but he used the resources available to him at RWLV to retaliate against [Plaintiff]." (Complaint ¶ 74.) Among other things, Sibella conspired with RWLV to use Alexander as a tool to force Plaintiff out of the casino.

Specifically, using his personal relationship with Alexander, Sibella informed Alexander about Plaintiff's complaints, knowing full well how Alexander would react.  Alexander reacted as Sibella had anticipated and a weeks-long campaign of harassment, assaults and threats against Plaintiff commenced on RWLV's premises that were not only tolerated, but also encouraged by Defendants.

Among other things, "Alexander, mounted on his mobility scooter repeatedly pursued and disrupted [Plaintiff's] play at RWLV's tables." (Complaint ¶ 37.) Additionally, "Alexander maneuvered his scooter within inches of [Plaintiff's] person, causing [him] to become fearful for his safety, and blatantly and unwillingly video recording [Plaintiff] against the latter's express instructions." (*Id.*)

Despite Plaintiff's numerous complaints, Defendants refused to take any action to protect him; rather, they encouraged and emboldened Alexander to continue his campaign of harassment, assaults and threats against Plaintiff. (*See, e.g.,* Complaint ¶¶ 39-42.) Defendants' failure to protect Plaintiff resulted in Plaintiff being forced to take action on his own to stop Alexader's harassment, which resulted in the November 19, 2021, arrest and criminal charges involving Alexandar's cellphone that Plaintiff had turned over to RWLV's security guard.[2] (Complaint ¶¶ 48-56.)

---

[2] To be clear, Plaintiff is not seeking to hold Defendants liable for any reporting of the cellphone incident to the police. Indeed, the Complaint does not even focus on who called the police. Rather, Plaintiff contends that, "[b]ut for RWLV's inaction, [he] would never have been subjected to weeks of threats and intimidation, nor would law enforcement been summoned, and an arrest effected for an incident which should never have transpired" had Defendants performed their duties owed to Plaintiff. (Complaint ¶ 56.)

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

NEMECEK & COLE

A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

While Plaintiff did not realize this at the time he complained to Sibella about Alexander and other felons being permitted to gamble at RWLV, Sibella was personally benefitting from his association with these felons as he was later "at the center of [an] investigation" by Federal law enforcement agents of the allegation that "both current and former RWLV employees had used casino assets to pay off gambling debts . . . [and that] these same individuals provided confidential customer data to illegal gambling rings that had been operating for decades." (Complaint ¶ 72.) This investigation ultimately resulted in Sibella's termination as President and COO of RWLV. (Complaint ¶ 73.)

### III.   <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001). FRCP 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading is to "give the defendant fair notice of what the . . . claim is and grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To do so, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

As the Supreme Court has noted, however, the plausibility standard is "not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a plaintiff need only allege "enough factual matter (taken as true)" that "nudge[s] [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 680. In conducting this analysis, all factual allegations in the complaint are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Sharkey v. O'Neal*, 778 F.3d 767, 768 n.1 (9th Cir. 2015).

"If there are two alternative explanations [of the facts alleged], one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

## IV.    ARGUMENT

### A.    NRS 463.3407 Does Not Bar The Complaint Because None Of Plaintiffs' Claims Are Based On Defendants' Communications With NGCB Or NGC

Sibella argues that the Complaint is barred by NRS 463.3407 because it is based on the communications between RWLV and the NGCB and/or NGC. (Motion at pgs. 9-11.) Specifically, Sibella claims that RWLV "filed a complaint with the GCB alleging Cipriani committed fraudulent acts in its casino, the GCB investigated and found probable cause, the DA's office filed criminal charges, and Cipriani ultimately pled to a lesser charge." Sibella claims that Plaintiff's claims and alleged damages "are premised on his gaming-related arrest and criminal charges." He is wrong.

The principal thrust or gravamen of each of Plaintiff's causes of action is Defendants exposing Plaintiff to the prolonged and brazen harassment, assaults and threats by Alexander that took place at RWLV's casino in 2021, **before** any purported communications between Defendants and NGCB. Specifically, the Complaint alleges that Alexander is a "convicted felon and habitual conman who was gambling the stolen money of his unfortunate investors at RWLV's tables." (Complaint ¶ 9.) After Plaintiff raised concerns about Alexander being permitted to gamble at Defendants' casino, Alexander commenced a campaign of "harassment and intimidation of [Plaintiff] on RWLV premises." (Complaint ¶ 36.) Among other things, "Alexander, mounted on his mobility scooter repeatedly pursued and disrupted [Plaintiff's] play at RWLV's tables." (Complaint ¶ 37.) Additionally, "Alexander maneuvered his scooter within inches of [Plaintiff's] person, causing [him] to become fearful for his safety, and blatantly and unwillingly video recording [Plaintiff] against the latter's express instructions." (*Id.*)

The Complaint further alleges that, despite Plaintiff's numerous complaints, Defendants refused to take any action to protect him; rather, they encouraged and emboldened Alexander to continue his campaign of harassment, assaults and threats against Plaintiff. (*See, e.g.,* Complaint ¶¶ 39-42.) Defendants' failure to protect Plaintiff resulted in him taking action on his own to stop Alexader's harassment, which resulted in the November 19, 2021, arrest and criminal charges involving Alexandar's cellphone that Plaintiff had turned over to RWLV's security guard.[3]

---

[3] To be clear, Plaintiff is not seeking to hold Defendants liable for any reporting of the cellphone incident to the police. Indeed, the Complaint does not even focus on who called the police.

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

(Complaint ¶¶ 48-56.)

The foregoing alleged events (and *not* any communications between Defendants and NGCB/NGC) form the basis of Plaintiff's claims against Defendants. Indeed, none of the causes of action even mention any communication between Defendants and NGCB/NGC, let alone rely on any such communication.

Under NRS 463.3407, communications between RWLV and NGCB/NGC are "absolutely privileged and [do] not impose liability for defamation or constitute a ground for recovery in any civil action." As demonstrated above, Plaintiff is not asserting a defamation claim, nor is he seeking to recover damages for any communications between Defendants and NGCB or NGC. While the Complaint contains a few allegations describing the post-harassment events leading up to the filing of this lawsuit, they are provided for reference purposes only and they do *not* form the basis of any of the claims asserted in the Compliant. Therefore, those claims are not barred (they cannot be barred) by NRS 463.3407.

In an analogous case, *Kelly v. 7-Eleven Inc.*, No. 09-cv-1376, 2009 WL 3388379 (S.D. Cal. Oct. 29, 2009), plaintiffs brought a putative class action alleging that defendant violated the ADA by engaging in a pattern of discrimination related to parking access barriers. *Id.* at *1. In addition to alleging defendant's failure to provide accessible parking, the complaint also alleged that defendant's "pattern of discrimination extend[ed] to its use of attorneys to engage in protracted litigation and defame Plaintiff ADA bar to avoid ADA compliance." *Id.*

The defendant filed an anti-SLAPP motion arguing that the claims arose out of privileged, litigation-related conduct. The court denied defendant's motion, reasoning that "the principal thrust or gravamen of Plaintiff's state law claims focuses on Defendant's alleged failure to provide accessible parking." *Id.* at *3. "While the claim incorporate[d] the references to litigation practices, the focus of the claim [was] clearly on Defendants' alleged failure to remove physical barriers to access." *Id.*; *see also Personal Court Reporters, Inc. v. Rand*, 205 Cal.App.4th 182, 190, 140

---

Rather, Plaintiff contends that, "[b]ut for RWLV's inaction, [he] would never have been subjected to weeks of threats and intimidation, nor would law enforcement been summoned, and an arrest effected for an incident which should never have transpired" had Defendants performed their duties owed to Plaintiff. (Complaint ¶ 56.)

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

Cal.Rptr.3d 301 (2012) ("It is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies, and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.").[4]

### B.   The Complaint Properly States Negligence Claim Against Sibella And Sibella Does Not Have To Be "Owner" Or "Keeper" To Be Liable To Plaintiff

Sibella argues that the Complaint does not contain facts sufficient to state a claim for negligence against him because he did not owe Plaintiff any duty of care.  Sibella is wrong.

A crucial factor in establishing liability in the context of special relationship between multiple parties is "the element of control." *Scialabba v. Brandise Constr. Co.*, 112 Nev. 965, 969, 921 P.2d 928, 930 (1996). Here, the Complaint contains more than sufficient facts for a reasonable inference that Sibella had direct control over Alexander and that Sibella was the force behind Alexander's harassment, assaults and threats against Plaintiff.

The Complaint alleges that Sibella "personally" knew Alexander and other fraudsters with criminal histories (e.g., Sattler and Ting) who were permitted to gamble at RWLV's casino. (Complaint ¶¶ 11-24.) The Complaint further alleges that "Sibella [was] personally familiar with [Plaintiff] . . . [who] ha[d] notified Sibella on multiple occasions of the continued presence of gamblers with criminal records, pending criminal charges, or who [were] otherwise the focus of law enforcement investigation at RWLV's tables." (Complaint ¶ 57.) However, when Plaintiff was making those complaints to Sibella, "he was unaware that it was Sibella himself who was directly involved. Once Sibella realized that [Plaintiff] posed a threat to Sibella, he not only refused to take action to protect [Plaintiff], but he used the resources available to him at RWLV to retaliate against [Plaintiff]." (Complaint ¶ 74.) Among other things, Sibella conspired with RWLV to use Alexander as a tool to force Plaintiff out of the casino.

---

[4] While these cases involved California's anti-SLAPP statute, the result would have been the same under Nevada's law. "Nevada's anti-SLAPP law is substantially similar to California's in both meaning and purpose, and the Nevada Supreme Court has repeatedly turned to California courts for guidance on interpreting and applying the statutes." *Allstate Ins. Co. v. Belsky*, No. 2:15-cv-02265, 2017 WL 7199651, at *3 (D. Nev. March 31, 2017).

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

Specifically, using his personal relationship with Alexander, Sibella informed Alexander about Plaintiff's complaints, knowing full well how Alexander would react.  Alexander reacted as Sibella had anticipated and a weeks-long campaign of harassment, assaults and threats against Plaintiff commenced on RWLV's premises that were not only tolerated, but also encouraged by Defendants.

These facts are more than sufficient to plead negligence against Sibella **individually**, and separate and apart from RWLV's liability.

C.   **The Complaint Alleges Sufficient Facts To State A Claim For IIED Against Sibella**

In order to state a claim for IIED, a complaint must plead the following elements: "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 970 P.2d 571, 577 (Nev. 1998). Importantly, a claim for IIED is subject to Rule 8(a)'s liberal pleading standard which "requires only that Plaintiff's Complaint include 'a short and plain statement of the claim showing that the [Plaintiff] is entitled to relief, and . . . demand a judgment for the relief [he] seeks." *Tu v. UCSD Medical Center*, 201 F. Supp. 2d 1126, 1130 (S.D. Cal. 2002).

The Complaint here alleges facts that are more than sufficient to state each element of IIED. For the "outrageous conduct" element, the Complaint details Sibella's nefarious plan to expose Plaintiff to a weeks-long campaign of harassment, assaults and threats by Alexander. (*See, e.g.,* Complaint ¶¶ 134-138; *see also id.* at 36-56.) For the intent/reckless disregard element, the Complaint alleges that after repeatedly being placed on notice of Alexander's harassment, assaults and threats, Defendants did not take any action whatsoever to prohibit or discourage Alexander's conduct; rather, they encouraged and emboldened Alexander to continue the harassment, assaults and threats in order to silence Plaintiff, "whom RWLV and Sibella deem[ed] a vocal patron revealing and publicizing RWLV's inconvenient truths." (*See, e.g.*, Complaint ¶¶ 139-141; *see also id.* at ¶¶ 57-71.) Finally, for the causation and extreme distress elements, the Complaint details the extreme distress caused to Plaintiff not only by the weeks-long harassment, assaults and threats by

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

one of Defendants' patrons (Alexander), but also the extreme distress from the events that transpired on November 19, 2021, after Plaintiff had had enough and decided to put an end to Alexander's abuse since Defendants had refused to do so. (*See, e.g.,* Complaint ¶¶ 141-142; *see also id.* at ¶¶ 39 ("[Alexander's conduct] made Mr. Cipriani extremely uncomfortable and even fearful for his safety while he was a guest at RWLV and the Crockfords Resort."); ¶ 79 ("But for RWLV and Sibella's inaction, Mr. Cipriani would not have suffered the physical harm [and] severe emotional distress . . ."); and ¶¶ 75-85.)

Under the liberal pleading standard of Rule 8(a), "[p]laintiffs need not provide every detail on which they base their claim; rather, they need only provide a claim for relief and its grounds." *Tu*, 201 F. Supp. 2d at 1131 (denying Rule 12(b)(6) motion to dismiss an IIED cause of action because the complaint placed the defendant "on notice that plaintiff's IIED claim is largely based on defendant's alleged discriminatory conduct"). Likewise, the Complaint here sufficiently provides such notice to Sibella and the IIED claim is properly plead.

### D.   The Complaint Properly Pleads Conspiracy And Concert Of Action Against Sibella

Sibella argues that the Complaint does not plead civil conspiracy and concert of action against him because Plaintiff "never alleges that Sibella was acting as an individual, outside his official capacity," and that the Complaint does not allege that there was an agreement to engage in conduct that was inherently dangerous or posed serious risk of harm to others. Sibella's self-serving reading of the Compliant is misguided and wrong..

The Complaint specifically alleges Sibella engaging in misconduct that was motivated by his personal gain. Among other things, the Complaint alleges that Sibella "personally" knew Alexander and other fraudsters with criminal histories—e.g., Brandon Sattler and Edwin Ting—who were permitted to gamble at RWLV's casino. (Complaint ¶¶ 11-24.) The Complaint further alleges that, based on his relationship with those individuals, Sibella overruled RWLV's compliance protocol to allow Ting and his friends to gamble at RWLV, even hosting Ting's birthday party." (Complaint ¶¶ 21-25.) Plaintiff also alleges that "Sibella enabled [convicted felons to gamble] by overruling RWLV's Anti-Money Laundering and due diligence compliance protocols." (Complaint

NEMECEK & COLE

A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

¶ 32.) Sibella personally benefitted from his misconduct as he was "at the center of [an] investigation" by Federal law enforcement agents of the allegation that "both current and former RWLV employees had used casino assets to pay off gambling debts . . . [and that] these same individuals provided confidential customer data to illegal gambling rings that had been operating for decades." (Complaint ¶ 72.) This investigation ultimately resulted in Sibella's termination as President and COO of RWLV. (Complaint ¶ 73.)

Finally, the Complaint alleges that, "Sibella is personally familiar with [Plaintiff] . . . [who] has notified Sibella on multiple occasions of the continued presence of gamblers with criminal records, pending criminal charges, or who are otherwise the focus of law enforcement investigation at RWLV's tables." (Complaint ¶ 57.) However, when Plaintiff was making those complaints to Sibella, "he was unaware that it was Sibella himself who was directly involved. Once Sibella realized that [Plaintiff] posed a threat to Sibella, he not only refused to take action to protect [Plaintiff], but he used the resources available to him at RWLV to retaliate against [Plaintiff]." (Complaint ¶ 74.) Among other things, Sibella conspired with RWLV to use Alexander as a tool to force Plaintiff out of the casino. These and other allegations are incorporated by reference into the civil conspiracy cause of action. (*See* Complaint at ¶ 144.)

In ruling on a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Sharkey v. O'Neal*, 778 F.3d 767, 768 n.1 (9th Cir. 2015). The forgoing allegations of misconduct by Sibella—taken as true—are more than sufficient to draw a reasonable inference that Sibella was motivated by personal gains, and he conspired with RWLV to silence Plaintiff whom he viewed as a threat to not only RWLV, but also to Sibella's personal criminal enterprise.

Under similar scenario, the district court in *In re Parmalat Securities Litig.*, 479 F. Supp. 2d 332 (S.D.N.Y. 2007), permitted a bank's civil conspiracy counterclaim against an entity (Parmalat) and its "insiders and agents" to move past the pleadings phase. In that case, "[a]lthough the counterclaims emphasize[d] that individual insiders 'were acting in their capacity as employees,' the Bank [did] allege that the 'corrupt insiders each had an independent personal and financial stake in achieving the corporation's illegal objective.'" *Id.* at 345. The counterclaims also included

NEMECEK & COLE

A PROFESSIONAL CORPORATION

16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300

TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

allegations such as, "Parmalat, as well as its corrupt insiders, benefited from the fraudulent activities." *Id*. The court considered these allegations sufficient to defeat a Rule 12(b)(6) motion to dismiss:

> The allegations of an independent stake are thin. On a motion to dismiss, however, the Bank is entitled to all reasonable inferences drawn from its allegations. The inference reasonably may be drawn that the individuals were motivated by personal gain as well as the interests of the Parmalat entity. The intracorporate conspiracy doctrine does not foreclose the conspiracy counterclaim at this stage of the litigation.

*Id*. at 345.

Moreover, the Complaint also alleges that Defendants not only permitted, but encouraged, Alexandar to engage in conduct that posed substantial risk of harm to Plaintiff and possibly other patrons of RWLV.

Specifically, the Complaint alleges that Alexander is a "convicted felon and habitual conman who was gambling the stolen money of his unfortunate investors at RWLV's tables." (Complaint ¶ 9.) Other fraudsters with felony convictions—e.g., Brandon Sattler and Edwin Ting—were also permitted to gamble at RWLV's casino. (Complaint ¶¶ 11-24.) After Plaintiff raised concerns about Alexander and other criminals being permitted to gamble at Defendants' casino, Alexander commenced a campaign of "harassment and intimidation of [Plaintiff] on RWLV premises." (Complaint ¶ 36.) Among other things, "Alexander, mounted on his mobility scooter repeatedly pursued and disrupted [Plaintiff's] play at RWLV's tables." (Complaint ¶ 37.) Additionally, "Alexander maneuvered his scooter within inches of [Plaintiff's] person, causing [him] to become fearful for his safety, and blatantly and unwillingly video recording [Plaintiff] against the latter's express instructions." (*Id*.)

The Complaint further alleges that, despite Plaintiffs' numerous complaints, Defendants refused to take any action to protect him; rather, Defendants encouraged Alexander's conduct. (*See, e.g.,* Complaint ¶¶ 39-42.) Defendants' failure to protect Plaintiff forced him to take action on his own and confront Alexander, which resulted in the November 19, 2021, arrest and criminal charges involving Alexandar's cellphone that Plaintiff had turned over to RWLV's security guard. In other words, Defendants used Alexander as a tool to silence Plaintiff whom they considered to be a threat

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

to their criminal enterprise.

These factual allegations—taken as true on a Rule 12(b)(6) motion—are more than sufficient to support an inference that Defendants' actions/inactions posed a substantial risk of harm to Plaintiff.

**E.    If The Court Were To Find Any Of The Claims Deficient, Plaintiff Deserves An Opportunity To Amend His Complaint**

The Ninth Circuit has consistently held that "requests for leave to amend should be granted with extreme liberality." *Couch v. Cate*, 379 Fed. Appx. 560, 563 n. 3 (9th Cir. 2010). A motion to dismiss should only be granted without leave to amend if it is clear the complaint cannot not be saved by ***any*** amendment. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004).

Here, Sibella did not even attempt to show that any amendment to the Complaint would be futile, and Sibella does not appear to contest that the appropriate remedy, even if the Court were to grant its motion, is to give Plaintiff leave to amend the Complaint. Thus, if the Court were to grant Sibella's motion as to any of the six causes of action, Plaintiff submits that there are additional facts, information and documentation that can be used to further support his causes of action against Sibella. Specifically, Plaintiff has additional facts showing that Sibella acted through Alexander in an attempt to silence Plaintiff and that Sibella did so for his personal gain.

**V.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Sibella's motion to dismiss.

Dated this 29th day of November 2023.

NEMECEK & COLE

By:    */s/Vikram Sohal*
Marshall R. Cole (*Pro Hac Vice*)
Vikram Sohal (*Pro Hac Vice*)
16255 Ventura Boulevard, Suite 300
Encino, California 91436-2300

And

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David J. Merrill
David J. Merrill, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

Attorneys for Plaintiff

NEMECEK & COLE
A PROFESSIONAL CORPORATION
16255 VENTURA BOULEVARD, SUITE 300, ENCINO, CALIFORNIA 91436-2300
TELEPHONE (818) 788-9500 FACSIMILE (818) 501-0328

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, counsel for Plaintiff ROBERT J. CIPRIANI hereby certifies that a true and correct copy of the foregoing document was made available for viewing and downloading through the Court's CM-ECF system to all counsel of record who are registered to receive a Notice of Electronic Filing for this case.

I declare under the penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed on this 29th day of November 2023 at Garden Grove, California.

/s/Vikram Sohal
Vikram Sohal

**OPPOSITION TO SCOTT SIBELLA'S MOTION TO DISMISS**