UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROBERT J. CIPRIANI,<br><br>      Plaintiff,<br>v.<br>RESORTS WORLD LAS VEGAS, LLC, *et al.*,<br><br>      Defendants. | Case No. 2:23-cv-01626-MMD-MDC<br><br>ORDER |

**I. SUMMARY**

Plaintiff Robert J. Cipriani sued Defendants Resorts World Las Vegas, LLC and Resorts World Las Vegas Hotels, LLC (collectively, "Resorts World") and Scott Sibella, the former president of Resorts World, for either encouraging another casino patron to harass Cipriani, or letting that patron harass Cipriani. (ECF No. 54 ("FAC").) Before the Court are Defendants' motions to dismiss the FAC (ECF Nos. 55, 59),[1] along with two associated motions to strike (ECF Nos. 56, 68). As further explained below, the Court will grant both motions to dismiss along with the earlier-filed motion to strike, though it finds the later-filed motion to strike moot because Cipriani withdrew the motion Resorts World seeks to strike. To preview, because Cipriani is judicially estopped from making several arguments and sets of allegations, and his claims otherwise fail as a matter of law, the Court will dismiss the FAC with prejudice.

///

///

///

---

[1] Cipriani filed a consolidated response to both motions (ECF No. 61), and Sibella (ECF No. 62) and Resorts World (ECF No. 64) filed replies in support of their motions.

## II.     BACKGROUND[2]

November 19, 2021, was a bad day for Cipriani. (ECF No. 54 at 9.) He was playing blackjack at Resorts World. (*Id.* at 3, 8-9.) Another patron named Robert Alexander had been harassing Cipriani for weeks. (*Id.* at 4.) Cipriani had complained to Sibella and others at Resorts World that Alexander should not have been allowed to gamble at Resorts World because he had pled guilty to federal fraud charges the year before and was thus a "convicted fraudster who has no place on a casino floor[.]" (*Id.* at 5.) But Defendants did not kick Alexander out after Cipriani complained about his presence. (*Id.* at 6-7.)

"Alexander, mounted on his mobility scooter, repeatedly pursued and disrupted [Cipriani's] play at [Resorts World's] tables." (*Id.* at 8.) "Time and time again, Alexander maneuvered his scooter within inches of [Cipriani's] person, causing Cipriani to become fearful for his safety, and blatantly and unlawfully video recording Cipriani against the latter's express instructions." (*Id.*) This culminated when Alexander did it again to Cipriani on November 19, 2021. (*Id.* at 9.) In response, Cipriani took Alexander's cellphone, ran away with it, and gave it to a Resorts World security guard. (*Id.*)

Cipriani was later arrested and charged with larceny for taking Alexander's phone. (*Id.* at 10.) Plaintiff generally alleges Defendants either let or encouraged Alexander to harass him because he complained to Sibella and others about Alexander and two other convicted felons being allowed to gamble at Resorts World and had made similar complaints to Sibella when Sibella oversaw the MGM Grand. (*Id.*; *see also id.* at 3-5.) And while Cipriani has removed most description of it from his operative FAC, Cipriani also alleged in his original complaint that he was also arrested on November 19, 2021 (the same day) based on a report that Resorts World made to the Nevada Gaming Control Board that Cipriani was past-posting bets while playing blackjack at Resorts World. (ECF No. 1 at 13-16.) In sum, November 19, 2021, was a bad day for Cipriani because he was

---

[2]The following facts are adapted from the FAC.

arrested twice after getting into this altercation with Alexander at Resorts World where he took Alexander's phone.

### III. DISCUSSION

The Court first addresses the pending motions to strike before addressing the motions to dismiss and then explaining why the Court will not give Cipriani another opportunity to amend.

#### A. Motions to Strike

To start, Resorts World's motion to strike (ECF No. 68) is moot because Cipriani withdrew (ECF No. 70) the request for judicial notice (ECF No. 66) that Resorts World seeks to strike. The Court deems the request for judicial notice (ECF No. 66) withdrawn and denies the motion to strike it (ECF No. 68) as moot.

But Sibella's motion to strike is not moot. Sibella moves to strike references to, and a copy of, a plea agreement that he entered into on December 18, 2023 (ECF No. 54 at 84), from Cipriani's FAC (*id.* at 4:18-19, 13:16-25, 15:10-12, 68-96 (attaching a copy of the plea agreement and related documents as an exhibit to the FAC)). "Federal Rule of Civil Procedure 12(f) provides that in its answer to the pleadings, the moving party may request that the court 'order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citation omitted). Immaterial and impertinent generally mean irrelevant, and scandalous includes allegations that cast a cruelly derogatory light on a party or other person. *See id.* (citations omitted).

Sibella argues the exhibit consisting of the plea agreement and references to it in the FAC should be struck because the plea agreement post-dates the complaint, relates to Sibella's employment with a different company during a different time, and involves different conduct than Sibella's alleged conduct in this case. (ECF No. 56 at 21-22.) Cipriani does not respond to the timeliness argument but asks that the Court not strike it because it is consistent with the type of conduct Cipriani complained about while Sibella

still worked for MGM, and those complaints motivated Sibella to punish Cipriani. (ECF No. 61 at 17-18.) The Court agrees with Sibella.

The plea agreement and references to it in the FAC are immaterial, impertinent, and scandalous. The plea agreement is not relevant to any of Cipriani's claims against Sibella in this case, because the plea agreement relates to a different time at a different casino involving different people. It is also scandalous as to Sibella because it is offered to support Cipriani's suggestion that Sibella is nefarious without tending to make any of Cipriani's allegations in the FAC more or less true. Moreover, and alternatively, inclusion of references to the plea agreement in the FAC are improper because the plea agreement post-dates the original complaint. (*Compare* ECF No. 1 (filed Oct. 9, 2023) *with* ECF No. 54 at 84 (dated December 18, 2023).) Although United States Magistrate Judge Maximiliano D. Couvillier, III granted Cipriani's motion to amend in part to include references to the plea agreement, the appropriate procedural mechanism for Cipriani to include allegations about the plea agreement was a motion for leave to file a supplemental complaint under Fed. R. Civ. P. 15(d) instead of an amended complaint under Fed. R. Civ. P. 15(a). (ECF No. 52.) *See also also Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (explaining the distinction as turning on whether the allegations predate or postdate the original complaint). Inclusion of the plea agreement and references to it in the FAC is thus procedurally improper as well as irrelevant and scandalous. The Court will direct the Clerk of Court to strike the exhibit consisting of the plea agreement and the references to it in the FAC. *See Finnegan v. Washoe Cnty.*, No. 3:17-cv-00002-MMD-WGC, 2017 WL 3299040, at *5 (D. Nev. Aug. 2, 2017) (striking a portion of a paragraph in an amended complaint after noting that, "[a]n amended complaint may not add facts that occurred after the date that the original complaint was filed." (citation omitted)).

### B.   Motions to Dismiss

Resorts World and Sibella make overlapping arguments in their motions to dismiss. The Court first addresses one of Resorts World's arguments pertinent to all of

Cipriani's claims, and then moves into a claim-by-claim analysis, noting who is making each argument as appropriate.

But before getting into that analysis, the Court explains how Cipriani has narrowed the scope of his FAC through concessions he has made in this case. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Grondal v. United States*, 21 F.4th 1140, 1151 (9th Cir. 2021) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001)). The Court finds it necessary to make this clarification at the outset of its analysis because, as described in the factual background above, three things Cipriani is understandably upset about happened on November 19, 2021: he got into an altercation with Alexander; he took Alexander's cell phone and was arrested and criminally charged for it; and he was arrested and criminally charged for past-posting bets.

However, Cipriani amended his Complaint to remove his allegations regarding the charges that he past-posted bets and argues in his opposition to the pending motions that his allegations in the FAC no longer cover that conduct. (ECF No. 52 at 1 (noting that one of the reasons Cipriani sought to amend was to remove "references to a report to the Nevada Gaming Control Board (NGCB)"), 54 (excluding allegations relating to past-posting and the NGGB investigation into Cipriani triggered by a report from Resorts World).) Similarly, Cipriani concedes in responding to the pending motions that his operative claims are not based on Defendants reporting him to the NGCB for past-posting bets. (ECF No. 61 at 7 (representing that communications between Defendants and NGCB do not form the basis for his claims against Defendants).) Because Cipriani has taken this position, he is estopped from contending otherwise. And the Court accordingly construes Cipriani's FAC as not alleging any claims based on Resorts World reporting Cipriani to the NGCB for past-posting bets or the ensuing criminal prosecution.[3]

---

[3]This finding also renders Resorts World's argument that this whole case is barred by application of NRS § 463.3407 inapplicable. (ECF No. 59 at 6 n.5, 13-15.)

5

Similarly, Plaintiff "is not seeking to hold Defendants liable for any reporting of the cellphone incident to the police[.]" (*Id.* at 6 n.1.) Plaintiff made an identical representation in response to Resorts World's first motion to dismiss his original complaint as well. (ECF No. 23 at 5 n.2.) Thus, while his allegations in his FAC are unclear (ECF No. 54 at 14 (alleging in pertinent part that Defendants harmed him because of an "unjustified arrest"), 17-19 (same)), Plaintiff is judicially estopped from arguing that his claims are based on Defendants calling the police about Cipriani taking Alexander's cell phone, which also led to Cipriani's arrest. The Court accordingly ignores the allegations in the FAC about an "unjustified arrest" and 'summoning law enforcement.'

The Court now proceeds to analyze the pending motions to dismiss with this narrowed understanding of Cipriani's claims. Said otherwise, the Court construes Cipriani as only alleging harm in the FAC based on Defendants either encouraging Alexander to harass him, or letting Alexander harass him.

### 1. Resorts World's Judicial Estoppel Argument as to Cipriani's Negligence and Related Claims

As noted, Cipriani's claims against Resorts World are based on his contention that its employees either encouraged Alexander to harass him or breached a duty they had to ensure his safety by letting Alexander harass him. (ECF No. 54 at 15-22.) Resorts World asks the Court to take judicial notice of a counterclaim Cipriani filed in a state court case Alexander and his son filed against Cipriani arising out of the same dispute that led to this case and find based on the content of that counterclaim that Resorts World cannot have breached the alleged duty it owed Cipriani because Cipriani is judicially estopped from alleging as such. (ECF No. 59 at 7-8.) Cipriani does not respond to this contention, nor does Cipriani oppose Resorts World's request for judicial notice. (ECF No. 61.) But the Court nonetheless finds it dispositive of Cipriani's claims against Resorts World in this case.

To start, the Court takes judicial notice of the counterclaim that Cipriani filed in state court against Alexander and his son. (ECF No. 59-4 at 14-16.) *See Porter v. Ollison*,

620 F.3d 952, 955 n.1 (9th Cir. 2010) (taking judicial notice of a petition that was filed in state court); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) ("We take judicial notice of the Montana state court orders and proceedings.").

Cipriani made one particularly pertinent allegation in this counterclaim that contradicts his allegations against Resorts World in the FAC.[4] Cipriani specifically alleged, on information and belief, that "Alexander was trespassed from [Resorts World] based upon his extreme and outrageous conduct and presumably to ensure the safety of guests such as" Cipriani. (ECF No. 59-4 at 15-16.) And 'on information and belief' is not an applicable caveat because Alexander and his son consistently alleged in their complaint in the state court case that, because of their altercation with Cipriani, they were trespassed from Resorts World and are no longer allowed on any Resorts World properties. (ECF No. 59-3 at 5.) So Resorts World trespassed Alexander following his altercation with Cipriani presumably to ensure Cipriani's safety. (ECF No. 59-4 at 15-16.) This cannot be squared with Cipriani's sole theory of how Resorts World harmed him; by allowing Alexander to harass him in disregard for his safety. (ECF No. 54 at 15-24 (describing the harm Cipriani suffered this way).)

Cipriani's claims against Resorts World—including his first three claims for negligence, innkeeper liability, and negligent supervision that the Court does not further address below as to their assertion against Resorts World—are accordingly barred under the doctrine of judicial estoppel. "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton*, 270 F.3d at 783; *see also id.* at 786 (finding the plaintiff was judicially estopped from pursuing claims against his homeowner's insurance company because he had taken an inconsistent position in a prior bankruptcy proceeding); *see also Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 606 (9th Cir. 1996) (finding that the plaintiff could not

---

[4]Cipriani filed the counterclaim in the state court case initiated by Alexander and his son on June 24, 2022 (ECF No. 59-4 at 2, 14), over a year before he initially filed this case (ECF No. 1 (filed October 9, 2023)).

7

establish a prima facie case of discrimination against her employer because, "having obtained a favorable settlement [in a prior worker's compensation proceeding] based on her assertion that she could not work, plaintiff was estopped from claiming that she was performing her job adequately."); *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 774 (9th Cir. 2009) ("because Spectrum presents us with a legal position that is clearly inconsistent with the position it took and benefitted from in previous litigation, judicial estoppel prevents us from allowing Spectrum to argue that it first published infringing material after purchasing its excess insurance coverage."). The Court accordingly grants Resorts World's motion to dismiss for this reason, though it offers some alternative reasons for dismissal of some of Cipriani's claims against Resorts World below.

### 2.     Sibella's Argument as to Cipriani's Negligence Claim

Sibella argues for dismissal of Cipriani's negligence claim against him in pertinent part because he owed Cipriani no duty to control Alexander's conduct, as Sibella and Cipriani lacked the requisite special relationship. (ECF No. 55 at 13-15.) Cipriani does not respond to this argument, instead responding only to Sibella's other argument that Cipriani inadequately alleged that Sibella personally participated in the alleged tortious conduct. (ECF No. 61 at 9-11.) Cipriani's nonresponse to the pertinent portion of Sibella's argument constitutes consent to granting Sibella's motion as to that argument. *See* LR 7-2(d). But even if it did not, the Court finds Sibella's argument persuasive.

"A claim for negligence in Nevada requires that the plaintiff satisfy four elements: (1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1175 (Nev. 2008). "[T]he question of whether a 'duty' to act exists is a question of law solely to be determined by the court." *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001) (citation omitted). And, "[g]enerally, 'no duty is owed to control the dangerous conduct of another.'" *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244 (Nev. 2011) (citation omitted). But an exception to this general rule arises "when (1) a special relationship exists between the parties ..., and (2)

the harm created by the defendant's conduct is foreseeable." *Id.* Whether a special relationship exists is largely a question of control—whether the plaintiff submitted to the real control of the defendant such that the control, if exercised by the defendant, would have meaningfully reduced the harm that the plaintiff suffered. *See id.* at 245.

Cipriani's allegations in the FAC are insufficient to establish that Sibella and Cipriani had the sort of special relationship that would have required him to protect Cipriani from Alexander's alleged harassment. As Sibella argues (ECF No. 55 at 13), the most Cipriani alleges is that Resorts World owed him a duty as a casino patron to exercise reasonable care in ensuring his safety, and that duty extended to Sibella, as Resorts World's president and COO "with full control over the operations of the hotel and casino" (ECF No. 54 at 16). But Plaintiff does not allege that Sibella was present at Resorts World while Alexander was harassing Cipriani, instead generally alleging that unnamed security personnel "witnessed the events unfold for weeks." (*Id.* at 16.) And while it is conceivable that the president and COO of a casino could respond to a complaint by one patron by kicking another patron out, it is not correspondingly reasonable to impose a duty on that executive to kick a patron out every time another patron asks. The FAC accordingly lacks allegations that Sibella had sufficient control over Alexander's alleged harassment of Cipriani for the Court to find that Sibella and Cipriani had a special relationship.

But perhaps more importantly, the FAC lacks allegations sufficient to establish that Cipriani submitted to Sibella's control such that the Court could impute a duty to Sibella by virtue of their special relationship. Indeed, there are no allegations going to whether and how Cipriani's ability to, "provide for his own protection has been limited in some way by his submission to the control of" Sibella. *Beckman v. Match.com, LLC*, No. 2:13-cv-97 JCM (NJK), 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018) (citation omitted); *see also id.* (finding that the plaintiff's negligence claim failed for this reason). The Court accordingly grants Sibella's motion as to Cipriani's negligence claim. (ECF No. 54 at 15-17.) *See Flaherty v. Wells Fargo Bank Nat'l Ass'n*, 623 F. Supp. 3d 1124, 1129 (D. Nev. 2022) (finding that there was "no special relationship" where the

9

1  allegations did not plausibly support that the plaintiff had submitted himself to the
2  defendant's control or the defendant otherwise controlled the plaintiff).

### 3. Sibella's Argument as to Cipriani's Innkeeper Liability Claim

Sibella next argues that Cipriani's claim against him for innkeeper liability fails because he is not the 'owner' or 'keeper' of Resorts World, and even Cipriani otherwise alleged in his FAC that the Genting Group owns Resorts World. (ECF No. 55 at 15-17.) Cipriani points to his allegation that Sibella had full control over the hotel and casino's operations in countering that he has sufficiently alleged this claim against Cipriani. (ECF No. 61 at 11-12.) The Court agrees with Sibella.

Cipriani specifically alleges a violation of NRS § 651.015, which prescribes the liability of "owners" or "keepers" of hotels to their patrons when the patron is injured or killed. (ECF No. 54 at 17-18.) *See also* NRS § 651.015. And to start, Cipriani does not exactly allege he was injured because of any action or inaction on Sibella's part. (ECF No. 54 at 17-18.) He alleges he was threatened and harassed by Alexander and alleges this harmed him and caused him emotional distress. (*Id.*) It is accordingly unclear to the Court whether Cipriani's innkeeper liability claim is cognizable against anyone because it is unclear whether he was injured by Alexander.

But regardless, Sibella is not the "owner" or "keeper" of Resorts World, so Cipriani's innkeeper liability claim against him fails. Indeed, Cipriani alleges that Resorts World operates the resort (*id.* at 2), and attached an exhibit to his FAC consisting of an email that Cipriani sent to the CEO of the Genting Group (*id.* at 67), which owns Resorts World (ECF No. 18 (certificate of interested parties)), complaining about Sibella and his tolerance for alleged criminals gambling at Resorts World—confirming that Plaintiff both understands and alleges Genting Group owns Resorts World. The Court is not required to—and does not—accept his implausible and contradictory allegation that Sibella should be subject to innkeeper liability because he had full control over Resorts World. *See, e.g.*, *Desio v. Russell Rd. Food & Beverage, LLC*, No. 2:15-cv-01440-GMN-CWH, 2016 WL

4721099, at *5 (D. Nev. Sept. 9, 2016) ("The Court need not accept contradictory allegations as true.").

In addition, the one case Cipriani relies upon to support his very short argument as to why this claim is cognizable is neither binding upon the Court nor persuasive. In *Ricketts v. Morehead Co.*, 122 Cal. App. 2d 948, 953 (Cal. Ct. App. 1954), the California Court of Appeals interpreted a California statute regarding an innkeeper's liability for property kept in a hotel safe to limit the maximum amount the plaintiff could recover from the couple that managed the hotel to $250. *See id.* And while it is true that the *Ricketts* court implicitly decided that hotel managers (in addition to the hotel's owner) could be liable for lost property, the California Court of Appeals did not focus on that point in the pertinent portion of the decision, instead focusing on its holding that the plaintiff's recovery against that couple was limited to $250. *See id.* But more importantly, *Ricketts* was not interpreting NRS § 651.015. And the California statute *Ricketts* was interpreting is more analogous to NRS § 651.010 than NRS § 651.015. In sum, the Court does not find *Ricketts* adequately supports Cipriani's argument that he alleged a cognizable claim under NRS § 651.015 against Sibella.

And while the Court was unable to locate binding precedent interpreting who is an "owner" or "keeper" under NRS § 651.015, the defendant in the cases it reviewed was always the owner of the hotel, not a managerial employee. *See, e.g.*, *Humphries v. New York-New York Hotel & Casino*, 403 P.3d 358, 360 (Nev. 2017) ("filed a complaint against NYNY"); *Est. of Smith ex rel. Smith v. Mahoney's Silver Nugget, Inc.*, 265 P.3d 688, 690 (Nev. 2011) ("filed suit against the Silver Nugget"); *Racine v. PHW Las Vegas, LLC*, 669 F. App'x 845 (9th Cir. 2016) ("Planet Hollywood"). This suggests to the Court that Cipriani is attempting to assert a novel theory—that a hotel manager can be considered the "owner" or "keeper" under NRS § 651.015—but failed to proffer any supporting caselaw or other legal authority in response to Sibella's motion. The Court can only conclude that Cipriani's NRS § 651.015 claim is not cognizable against Sibella. Sibella's motion is accordingly granted as to Cipriani's NRS § 651.015 claim. (ECF No. 54 at 17-18.)

### 4. Sibella's Argument as to Cipriani's Negligent Hiring, Training, and Supervision Claim

Sibella next argues that Cipriani's claim for negligent hiring, training, and supervision is not cognizable against him because he is not the employer of the unnamed other Resorts World employees who either encouraged or allowed Alexander to harass Cipriani. (ECF No. 55 at 16-18.) The entirety of Cipriani's responsive argument is, "[a]s for the third cause of action, the FAC specifically alleges that, 'Sibella also had control over hiring, training, supervision, discipline, discharge, security and relevant day-to-day aspects of RWLV's operations.' (ECF No. 61 at 12 (quoting (FAC ¶ 108)).) The Court again agrees with Sibella.

To start, while Fed. R. Civ. P. 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pointing to a single, conclusory allegation is accordingly insufficient to successfully oppose a motion to dismiss. Second, "[a] claim for negligent hiring, training, or supervision contemplates liability for an employer based on injuries caused by a negligently managed employee." *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 520 P.3d 803, 812 (Nev. 2022) (citation omitted). And Cipriani does not actually dispute that Sibella did not employ the other, unnamed Resorts World employees that allegedly encouraged or permitted Alexander to harass Cipriani. (ECF No. 61 at 12.) Sibella was not the other employees' employer. As such, Cipriani's claim for negligent hiring, training, and supervision is not cognizable against Sibella. Sibella's motion is accordingly granted as to this claim as well. (ECF No. 54 at 18-19.)

### 5. IIED

Both Resorts World and Sibella argue that Cipriani does not allege a plausible IIED claim in his FAC because the emotional distress he complains of is conclusory and insufficiently severe, and Cipriani alleges that Alexander caused the distress, not

1  Defendants. (ECF Nos. 55 at 20, 59 at 17-18.) Cipriani counters that he adequately
2  alleged the outrageous conduct element because Defendants breached their duties to
3  him, they did not act on his complaints about Alexander after he made them, and he was
4  'extremely uncomfortable and feared for his safety' on November 19, 2021. (ECF No. 61
5  at 12-13.) Cipriani further counters that he did not need to provide every detail supporting
6  his IIED claim to make it plausible, and he is not necessarily required to establish a
7  physical manifestation of his emotional distress if it is severe enough. (*Id.* at 13-14.) The
8  Court agrees with Defendants.

9  "The elements of a cause of action for intentional infliction of emotional distress
10 are '(1) extreme and outrageous conduct with either the intention of, or reckless disregard
11 for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme
12 emotional distress and (3) actual or proximate causation.'" *Dillard Dep't Stores, Inc. v.*
13 *Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (citation omitted). To establish severe emotional
14 distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity
15 that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*,
16 819 F. Supp. 905, 911 (D. Nev. 1993) (citing *Nelson v. City of Las Vegas*, 665 P.2d 1141,
17 1145 (Nev. 1983)). "General physical or emotional discomfort is insufficient to
18 demonstrate severe emotional distress." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268 (D.
19 Nev. 2001) (citing *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993)).

20 As noted, Cipriani argues that Defendants' conduct was extreme and outrageous
21 because Defendants breached their duties to him. (ECF No. 61 at 12.) But the Court found
22 above that Defendants did not breach any duties they owed Cipriani; Resorts World
23 because Cipriani is judicially estopped from making such an argument and Sibella
24 because he owed Cipriani no duty. *See supra.* Cipriani accordingly has not—and
25 cannot—satisfy the first element of his IIED claim.

26 The Court is further unconvinced that the stress Cipriani describes in the FAC is
27 so severe and of such intensity that no reasonable person could be expected to endure
28 it. Cipriani describes in the FAC how Alexander repeatedly maneuvered his mobility

13

scooter close to him and interrupted his blackjack playing. (ECF No. 54 at 8-9.) Alexander also video recorded Cipriani even though Cipriani asked him not to. (*Id.*) These interactions culminated on November 19, 2021, when Alexander drove his scooter close to Cipriani and started filming him—so Cipriani took Alexander's cellphone and gave it to a Resorts World security guard. (*Id.* at 9.) Cipriani otherwise suggests that Alexander verbally harassed him but does not elaborate on what Alexander said to him. (*See generally id.*) At most, these allegations describe general physical or emotional discomfort insufficient to demonstrate severe emotional distress. *See Burns*, 175 F. Supp. 2d at 1268; *see also Candelore v. Clark Cnty. Sanitation Dist.*, 752 F. Supp. 956, 962 (D. Nev. 1990), *aff'd*, 975 F.2d 588 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 41, which states that IIED "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"). The Court accordingly finds that Cipriani has not plausibly alleged the second element of an IIED claim.

Cipriani's IIED claim also has a causation issue. Cipriani indeed alleges that he "was needlessly subjected to the inevitable severe emotional distress associated with an extended campaign of harassment, assaults and intimidation at the hands of Alexander[.]" (ECF No. 54 at 15.) Cipriani consistently alleged in his state court counterclaim that Alexander (and his son) subjected Cipriani to severe emotional distress. (ECF No. 59-4 at 16.) Plaintiff accordingly himself alleges that Alexander was the source of his emotional distress—not Defendants. The Court thus finds that Plaintiff has not plausibly alleged the third element of his IIED claim either—actual or proximate causation.

In sum, the Court dismisses Cipriani's IIED claim. Both of Defendants' motions are correspondingly granted.

### 6. Civil Conspiracy

Defendants further argue that Cipriani's civil conspiracy claim fails because his underlying IIED claim fails, and because of the intra-corporate conspiracy doctrine. (ECF Nos. 55 at 20-21, 59 at 18-20.) Cipriani does not respond to the argument that this claim fails because his IIED claim fails—likely because he unsuccessfully contends his IIED

claim does not—but counters the intra-corporate conspiracy doctrine argument by arguing he has alleged that Sibella engaged in some misconduct motivated by seeking his own personal gain. (ECF No. 61 at 14-16.) The Court agrees with Defendants that this claim fails because Cipriani's underlying IIED claim fails.

"Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results." *Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*, No. 2:18-cv-01118-JAD-VCF, 2020 WL 719410, at *5 (D. Nev. Feb. 12, 2020) (quoting *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014)). And "it is necessary for the act in furtherance of the conspiracy to constitute an actionable tort." *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 (Nev. 1980). As discussed above, Cipriani has not plausibly alleged any actionable tort claim against either Defendant. So Cipriani's civil conspiracy claim necessarily fails. Both Defendants' motions are granted as to this claim.

### 7. Concert of Action

Defendants finally argue Cipriani's concert of action claim fails because he does not allege that they agreed to engage in inherently dangerous conduct; letting Alexander get too close to Cipriani on his scooter is not that. (ECF Nos. 55 at 20, 59 at 20-21.) Cipriani counters that Alexander's harassment exposed him to a serious risk of harm because he maneuvered his scooter too close to Cipriani and caused Cipriani to take Alexander's cellphone, which led to Cipriani's arrest. (ECF No. 61 at 16-17.) The Court again agrees with Defendants.

To start, and as noted above, Cipriani is precluded from arguing harm based on his arrest for taking Alexander's cellphone under the doctrine of judicial estoppel. Cipriani is accordingly left with the allegation that Alexander maneuvered his scooter too close to Cipriani. But the Court finds this allegation does not plausibly constitute inherently dangerous conduct.

///

In Nevada, a concert of action claim requires "the defendants agree to engage in an inherently dangerous activity, with a known risk of harm, that could lead to the commission of a tort." *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Courts have noted that some activities are inherently dangerous, like drag racing, *see Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 111 (1998)*, abrogated by GES*, 21 P.3d 11, or organizing a high-tech scavenger hunt where someone was rendered blind and paraplegic after falling 30 feet down an abandoned mine shaft, *see Lord v. Chew*, 373 P.3d 937 (Nev. 2011); *but see id.* (not specifically finding this activity was inherently dangerous and instead focusing on the propriety of a jury instruction). But other courts have found other activities lacking in the inherent danger required to state a claim for concert of action, such as real estate transactions, *see Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1092 (D. Nev. 2012), entering into a contract "to build a communications" tower, *see Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-CV-0513-LRH-GWF, 2015 WL 4172442, at *6 (D. Nev. July 9, 2015), posting articles and videos online disparaging opposing counsel in a family court proceeding, *see Abrams v. Sanson*, 458 P.3d 1062, 1064-65, 1070 (Nev. 2020), "[m]aking and reviewing a promotion decision at a university[,]" *Honghui Deng v. Nevada ex rel. Bd. of Regents for Nevada Sys. of Higher Educ.*, No. 2:17-cv-03019-APG-VCF, 2020 WL 1470866, at *3 (D. Nev. Mar. 25, 2020), "manipulating the use of [police] force reports[,]" *Carr v. Las Vegas Metro. Police Dep't*, No. 2:16-cv-02994-APG-NJK, 2017 WL 4274163, at *5 (D. Nev. Sept. 25, 2017), and entering into an "alleged joint agreement to allow [the defendant] to illegally access Plaintiffs' email and server[.]" *Dickerson v. Wells*, No. 2:08-cv-00630-KJD-PAL, 2009 WL 10693511, at *2 (D. Nev. Mar. 18, 2009).

At risk of comparing apples to oranges, letting Alexander maneuver his scoter closer than Cipriani would have liked to him is much closer to the activities described above that other courts have found not inherently dangerous than drag racing or organizing a high tech scavenger hunt. It is simply implausible that not kicking Alexander out of Resorts World when Cipriani first complained about him was inherently dangerous.

1  Cipriani's concert of action claim accordingly fails, and Defendants' motions are granted
2  as to this claim.

### C.     Leave to Amend

Cipriani requests leave to amend in a cursory way at the conclusion of his response to the pending motions. (ECF No. 61 at 18.) He simply states that neither Defendant has shown amendment would be futile, so the Court should grant him leave to amend if it finds any of his claims should be dismissed. (*Id.*) He does not, however, attach a proposed amended pleading in compliance with LR 15-1, make any argument about how he could amend consistent with his claims to make any of them plausible, or offer any additional facts suggesting that amendment would not be futile. Moreover, and as discussed above, Cipriani has already been granted leave to amend once (ECF No. 52), leading to denial of the first round of motions to dismiss as moot (ECF No. 53). And the reasons for dismissal the Court provided above stem primarily from the resolution of questions of law that do not suggest amendment would be productive. Said otherwise, it is not as if the Court merely found some factual allegations lacking but the existing allegations suggest there are other facts out there that would make Cipriani's claims plausible.

After whittling down Cipriani's claims through application of the doctrine of judicial estoppel, Cipriani is left only with his allegations that Defendants let Alexander harass him and maneuver his scooter too close to him. And Cipriani has alleged in a related state court suit that Resorts World trespassed Alexander and his son presumably for Cipriani's safety after the incident where Cipriani took Alexander's cellphone that also lies at the heart of this case. Thus, as the Court found above, he is judicially estopped from pursuing any of his claims against Resorts World. In addition, the Court found that several of his claims against Resorts World fail for alternative reasons. As to Sibella, the Court found that Cipriani's core negligence claim against him failed because Sibella owed Cipriani no duty—a finding of law that would not change with any potential amendment. *See, e.g.*, *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1063 (Nev. 2007) ("the existence of 'duty' is

a question of law"). All of this leads the Court to the overall conclusion that amendment would be futile. The Court will accordingly dismiss Cipriani's FAC with prejudice.

## IV.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Sibella's motion to dismiss (ECF No. 55) is granted as specified herein.

It is further ordered that Sibella's motion to strike (ECF No. 56) is granted.

The Clerk of Court is directed to strike Sibella's plea agreement and related allegations in the FAC. (ECF No. 54 at 4:18-19, 13:16-25, 15:10-12, 68-96.)

It is further ordered that Resorts World's motion to dismiss (ECF No. 59) is granted as specified herein.

It is further ordered that Resort World's motion to strike (ECF No. 68) Cipriani's request for judicial notice (ECF No. 66) is denied as moot because Cipriani withdrew that request (ECF No. 70).

It is further ordered that the FAC (ECF No. 54) is dismissed, in its entirety, with prejudice.

The Clerk of Court is directed to enter judgment accordingly—in Defendants' favor—and close this case.

DATED THIS 23rd Day of October 2024.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE